Davis T. Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-262-5728
dnmiracle@gmail.com

FILED

2009 SEP 25 PM 1:58

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | | |
|---|---|---|
| **DAVIS T. NGUYEN** | ) | CIVIL ACTION NO.: SACV08- |
| **Plaintiff** | ) | 00830CJC (PJWx) |
| | ) | HON. CORMAC J. CARNEY |
| | ) | |
| **vs.** | ) | |
| | ) | **THIRD AMENDED COMPLAINT** |
| | ) | **FOR DAMAGES AND** |
| **COUNTRYWIDE HOME LOANS,** | ) | **INJUNCTIVE RELIEF** |
| **INC., and DOES 1-10,** | ) | **AND REQUEST FOR JURY TRIAL** |
| **Defendants.** | ) | |
| | ) | Action Filed: 07/25/2008 |
| _____ | ) | NO TRIAL DATE SET |

1. **FIRST CAUSE OF ACTION: VIOLATIONS OF TRUTH-IN-LENDING ACT (RIGHT TO CANCEL LOAN TRANSACTION ONE);**

2. **SECOND CAUSE OF ACTION: VIOLATIONS OF TRUTH-IN-LENDING ACT (RIGHT TO CANCEL LOAN TRANSACTION TWO);**

3. **THIRD CAUSE OF ACTION: VIOLATIONS OF TRUTH-IN-LENDING ACT (TOLERANCES FOR ACCURACY);**

4. **FOURTH CAUSE OF ACTION: VIOLATIONS OF CALIFORNIA**

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

1   **BUSINESS & PROFESSIONS CODE §17200, § 17203, § 17207**

2   **(FRAUDULENT ACT);**

3   5.  **FIFTH CAUSE OF ACTION:  VIOLATIONS OF CALIFORNIA BUSINESS &**

4   **PROFESSIONS CODE §17200, § 17203, § 17207 (UNFAIR BUSINESS**

5   **ACT).**

6

7   **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

8   **AND DEMAND FOR JURY TRIAL**

9   **JURISDICTION**

10  1.  Jurisdiction is conferred on this Court as to claim under the *Truth in Lending*

11  *Act* (Hereafter "TILA"), the *Real Estate Settlement Procedures Act* (Hereafter

12  "RESPA") by *15 U.S.C.A. 1601 et seq., 15 U.S.C. § 1605, 15 U.S.C. §1606,*

13  *15 U.S.C. § 1607 and 12 U.S.C. A. 2601 et seq.,* and also claims under the

14  California *Business & Professions Code § 17200, § 17203, § 17207.*

15  2.  This Court has supplemental jurisdiction over Plaintiff' state law claims

16  pursuant to *28 U.S.C. § 1367.*

17  **PRELIMINARY STATEMENT**

18  3.  This Complaint is filed under the Truth in Lending Act, *15 U.S.C. § 1601*

19  (Hereafter "TILA") to enforce the rights of Plaintiff DAVIS T. NGUYEN

20  (Hereafter "Plaintiff") to rescind a consumer credit transaction, to void the

21  security interest of Defendant COUNTRYWIDE HOME LOANS, INC.

22  (Hereafter "Countrywide") in Plaintiff home which identified as 21359 Estepa

23  Circle, Huntington Beach, California 92648 in the County of Orange, State

24  of California (Hereafter "Subject Property"), and to recover statutory

25  damages, reasonable attorney's fees and costs by reason of Defendant

26  Countrywide's violations of TILA, HOEPA, RESPA, and Regulation Z, *12*

27  *C.F.R § 226* (Hereafter "Regulation Z").

28  4.  Plaintiff hereby claims under the *Truth in Lending Act, 15 U.S.C. A. 1601 et*

*seq., 15 U.S.C. § 1605, 15 U.S.C. §1606, 15 U.S.C. § 1607* and *12 U.S.C.*

*A. 2601 et seq.*

5. Plaintiff believes and therefore alleges that he was never informed by Countrywide and/or its loan officer Aaron Gale about his three-days right to cancel prior to the funding of loan Transaction One and Transaction Two.

6. Plaintiff believes and therefore alleges that he was not provided with two complete forms of Notice Of Right To Cancel from Countrywide and/or its employee Aaron Gale, and Plaintiff never sign on any of these forms, whether they were appropriately filled out or not.

7. Plaintiff believes and therefore alleges that he was left with one blank form of Notice of Right To Cancel. This form was buried under a stack of loan document and Countrywide and/or its loan officer Aaron Gale never mentioned, informed or explained what this form is use for, either before, during or after the signing of the loan document.

8. Plaintiff believes and therefore alleges that Countrywide was hiring a non-license, non-professional loan officer who was not equipped with adequate knowledge to perform loan transactions which were not financial suitable for Plaintiff. In fact, Aaron Gale did not qualified to explain any of the loan terms such as how the Option ARM operates.

9. Plaintiff believes and therefore alleges that Countrywide and/or Aaron Gale ignored the fact that the law required lender to disclose to its consumer of his 3-days right to cancel prior to the funding of his loans.

10. Plaintiff believes and alleges that Countrywide and/or Aaron Gale are failed to disclose to Plaintiff that if Countrywide failure to provide two completed Notice Of Right to Cancel, then Plaintiff's right to cancel will be extended from 3 days into three years.

11. Plaintiff believes and therefore alleges that Countrywide and/or Aaron Gale have violated the law by misrepresentation or concealment, suppression or omission of his 3-days right to cancel and his 3-year extended right to cancel. Plaintiff Nguyen detrimentally relied on Defendant's

THIRD AMENED COMPLAINT AND DEMAND FOR JURY TRIAL (Nguyen v. Countrywide, et. al.)

-3-

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

misrepresentation and since Defendant concealed of his right, Plaintiff did not know he has any right to cancel, either 3-days prior to the loan funding or 3-years extension from the date of execution loan transaction.

12. Plaintiff believes and therefore alleges that Countrywide's Continued Intentional Misrepresentations were a direct, foreseeable, producing, and proximate cause of the irregular foreclosure of his home and other economic damages to Plaintiff.

13. Plaintiff hereby declares that the his TILA complaint and claims of rescission are subject to equitable "tolling". This "tolling" means that the clock on the limitation time period will not start to tick until the customer discovers or reasonably should have discovered the fraud. Tolling (or not starting the clock) may often be appropriate where the customer has continued to rely upon the agent/lender for a long period after the initial transaction and the agent/lender continues to conceal the wrongdoing. The principle of equitable tolling does apply to TILA 3 years period of rescission since despite due diligence, Plaintiff Davis Nguyen could not have reasonably discovered the conceal fact of TILA violations in-depth and explicitly until July 21, 2008 at about 2:00PM when he contacted an attorney and be advised of the TILA violations of Countrywide Home Loans, Inc., through and with its employee/interviewer/loan officer, Aaron Gale.

14. The equitable tolling principles are to be read into every federal statute of limitations unless Congress expressly provides to the contrary in clear and ambiguous language, (See Rotella v. Wood, 528 U.S. 549, 560-61, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000)). Since TILA does not evidence a contrary Congressional intent, its statute of limitations must be read to be subject to equitable tolling, particularly since the act is to be construed liberally in favor of plaintiff.

15. Plaintiff also brings this action pursuant to Business and Professions Code sections §17200, §17203, § 17207 to seek for restoration to Plaintiff in

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

interest, the money and/or his real property which may have been acquired by Defendant Countrywide by engaging in fraud and unlawful business practices, misrepresentation, untrue or misleading statements, unfair competition, as alleged herein, and seeks to obtain civil penalties and other remedies for the Defendants' violations of those statutes.

## PARTIES

16. Plaintiff is an individual, who is, and at all times relevant to this action was, a resident of the State of California and the County of Orange, and residing at the Subject Property.

17. Defendant Countrywide Home Loans, Inc. (hereafter "Countrywide") is, or at all times relevant to this action was, a domestic corporation, business entity, and/or a "Doing Business As" entity, incorporated in the State of New York, with a mailing address of 4500 Park Granada, Calabasas, California 91302. The Agent for Service of Process is: C T Corporation System, 818 West Seventh St, Los Angeles, CA 90017.

18. Plaintiff believes, and thereon allege, that at all times relevant hereto, Defendant Countrywide, in the ordinary course of business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

19. Plaintiff is not aware of the true names and capacities of the defendants sued as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Third Amended Complaint to add the true names of the fictitiously named defendants once they are discovered.

20. Whenever reference is made in this Third Amended Complaint to any act of any defendant(s), that allegation shall mean that each defendant acted individually and jointly with the other defendants.

21. Any allegation about acts of any corporate or other business defendant

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

means that the corporation or other business did the acts alleged through its officers, directors, employees, agents, brokers and/or representatives while they were acting within the actual or ostensible scope of their authority.

22. At all relevant times, each defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Third Amended Complaint.

23. Additionally, some or all of the defendants acted as the agent or the broker of Defendants, and all of Defendants acted within the scope of their agency if acting as an agent or broker of another. The Countrywide employees who marketed, sold or negotiated the terms of Loan Transaction One and Loan Transaction Two, either directly to Plaintiff or indirectly by working with mortgage brokers, are referred to herein as "loan officers/brokers."

24. At all relevant times, each defendant knew or realized that the other defendants were engaging in or planned to engage in the violations of law alleged in this Third Amended Complaint. Knowing or realizing that other defendants were engaging in or planning to engage in unlawful conduct, each defendant nevertheless facilitated the commission of those unlawful acts. Each defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other defendants in the unlawful conduct.

25. At all relevant times, Defendants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law alleged in this Third Amended Complaint. This conspiracy, common enterprise, and common course of conduct continues to the present.

26. The violations of law alleged in this Third Amended Complaint occurred in Huntington Beach and elsewhere throughout Orange County of California.

## FACTUAL ALLEGATIONS

27. The allegations of this complaint stated on information and belief are likely

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

1  to have evidentiary support after a reasonable opportunity for further
2  investigation or discovery.

3  28. On or about 06/29/06, an employee of defendant Countrywide, namely
4  Aaron Gale, solicited Plaintiff by telephone, offering a refinancing to
5  Plaintiff's original loans for better loan terms.

6  29. On or about 7/24/06, Plaintiff was asked to go to a "Branch Office" of
7  Countrywide Home Loans, Inc. at 101 Main Street, Suite 260, Huntington
8  Beach, to sign loan documents prepared by Aaron Gale and/or more of
   defendant Countrywide's employees. This Office has Countrywide Home
9  Loans' Sign and Logo presented on the wall and on the receptionist's desk.
10 Being entrusted to the solicitation of Aaron Gale, Plaintiff entered into
11 consumer credit transactions, loan number 141245163 (Hereafter "Loan
12 Transaction One) and a Piggy Back HELOC loan number 141245171
13 (Hereafter "Loan Transaction Two") with Defendant Countrywide.

14 30. The terms of the Loan Transaction One as arranged by Defendant
15 Countrywide are as follows: A loan amount of nine hundred and eight
16 thousand dollars ($908,000) at an initial yearly interest rate of 2.5%,
17 negative amortizing Option ARM with a term of thirty years.

18 31. The terms of the Loan Transaction Two as arranged by Defendant
19 Countrywide are as follow: A loan amount of one hundred and twenty-seven
20 thousand dollars ($127,000) at an initial interest rate of 11% with a term of
   twenty-five years.

21 32. Included in the loan documents was a purported application had a printed
22 dated of 7/24/06. This application was not prepared by Plaintiff nor was
23 Plaintiff provided an opportunity to review such application as it was
24 included with the loan documents and Plaintiff was asked to sign it at the
25 same time he was asked to sign his loans on 07/24/06. A true and correct
26 copy of the purported application hereby attached to this Third Amended
27 Complaint as EXHIBIT A, PURPORTED LOAN APPLICATION.

28

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

33. Plaintiff Nguyen have reason to believe that the loan terms were misrepresented to him at the time of the application and further obscured and/or modified prior to signing. Plaintiff believes that his income was inflated on the application. He also has reason to believe that certain statements were not provided for his approval prior to closing, and that his signatures may have been forged on various documents. It is also plaintiff's belief that certain documents may have not presented to him at all, such as the ARM hand book, and Good Faith Estimate.

34. Furthermore, plaintiff believes that a notary was not present to witness his signatures on several pertinent documents and that this transaction did not take place in a legitimate title/escrow/real-estate office with any title/escrow/real-estate professionals and therefore Plaintiff was left with ill advices and conceal information, including but not limited to the hiding of consumer's 3-day rights to cancel prior to the time of funding.

35. The TILA *Codified to 15 U.S.C. 1605 § 106 (f)* defines of the TOLERANCES FOR ACCURANCY. In the Event of a foreclosure, the TILA *Codified to 15 U.S.C. 1605 § 106 (f)* does not allow the variance exceed of $35. Defendant Countrywide has exceeded this tolerances for accuracy, and wrongful charged plaintiff for tax service, when defendant Countrywide is not legal to charge for such legal fee, as plaintiff describes in more details under the Third Cause of Action below. The Good Faith Estimate and the Settlement Statement are attached to this Complaint as EXHIBIT B, THE GOOD FAITH ESTIMATE VS. SETTLEMENT STATEMENT and by this reference is incorporated herein.

36. A search of State of California, Department of Real Estate revealed that Aaron Gale has never held a Salesperson's or Broker's license. Public records revealed that Countrywide Home Loans never had any office registered at 101 Main Street, Huntington Beach, CA, as plaintiff describes in more details under the Fourth Cause of Action below. A true and correct

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

1    copy of the internet research is attached to this Third Amended Complaint

2    as EXHIBIT C, PROOF OF FRAUDULENT BUSINESS ACT.

3    37.  As a part of the result from this fraudulent act, Plaintiff has suffered the

4    threaten of losing his home due to the conceal of wrongful acts of defendant

5    Countrywide and its employee/interviewer Aaron Gale.  Defendant

6    Countrywide hired and allowed Aaron Gale, a non-license agent, without

7    proper training or professional knowledge, to interview and solicitude plaintiff

8    into loan transactions with wrongful and misleading information, as plaintiff

     alleges in more details below.

9    38.  Plaintiff was told by Aaron Gale that interest was fix at 2.500% during the

10   first year, then the interest rate will be adjusted every year after September

11   2007.  Aaron Gale showed plaintiff Page 2 of the Adjustable Rate Rider

12   (Hereafter "ARR"), which stated: "I will pay interest at a YEARLY RATE OF

13   2.500%".  He also showed plaintiff Page 3 of the ARR, Payment Change

14   Dates, which stated: "My monthly payment may change as required by

15   Section 3(D) below beginning on the first day of SEPTEMBER, 2007, and

16   on that day every 12th month thereafter".  These showing has mislead

17   Plaintiff to believe what the defendant Countrywide's employee verbally

18   explained as "The interest rate is fixed at 2.500% during the first year",

19   which is not true.  The actual interest rate charged by defendant

20   Countrywide during the first year was 7.40%, a variance of -4.9%, as plaintiff

21   describes in full detail under the Fifth Cause Of Action below.  The ARR is

22   attached to this Complaint as EXHIBIT D, THE ADJUSTABLE RATE RIDER

     and by this reference is incorporated herein.

23   39.  Defendant Countrywide's employee, Aaron Gale, made Plaintiff believed

24   that if he made payments as per the schedule on the ARR that he would be

25   paying both principal and interest on the balance. The truth is that if he paid

26   as per the schedule on the ARR, and that if he made the payments as set

27   forth will result in negative amortization and no principal being applied to the

28

loan balance. The New Loan Payment Form, Section Estimated Monthly Payment states: "**Principal and Interest** " $3,587.70 was a misleading. The New Loan Payment Form is attached to this Complaint as EXHIBIT E, THE NEW LOAN PAYMENT FORM, and by this reference is incorporated herein.

40. Furthermore, the TILA *Codified to 15 U.S.C. 1607 § 108 (e)* requires an accuracy on disclosure of annual percentage rate, and an adjustment of financial charge when it determines that such disclosure error resulted from (A) a clear and consistent pattern or practice of violations, (B) gross negligence, or (C) a willful violation which was intended to mislead the person to whom the credit was extended. Defendant Countrywide has violated the accuracy on disclosure of annual percentage rate by far, as plaintiff describes in great detail under the Fifth Cause of Action below.

41. On or about 07/21/08, Plaintiff brought his loan documents for his attorney audited and reviewed. With the explanation of his attorney, Plaintiff then discovered how his mortgage became negative under the "teasing rate" of Option ARM loan and the TILA requirements that Countrywide failed to comply. Plaintiff also was educated about his rescission right regarding to the improper copy of NOTICE OF RIGHT TO CANCEL. Plaintiff realized Loan Transaction One and Loan Transaction Two were not financially suitable for him at all and he wished to cancel these loans from the start.

42. On, or about, July 24, 2006, and at the time of the signing of the loan documents, Plaintiff was left with only one copy of the Notice of Right to Cancel. The single copy of the Right to Cancel provided to Plaintiff was not properly completed as is required by TILA. In addition, Plaintiff was not provided with two Notices of the Right to Cancel as required by TILA. Plaintiff hereby denies ANY copy of defendant that is contradict to this truth, as the copy on plaintiff's hand is a genuine copy in legal size 8.5 x 14. A true and correct copy of the improperly completed Notice of Right To Cancel is attached hereto and by this reference are incorporated herein as EXHIBIT

THIRD AMENED COMPLAINT AND DEMAND FOR JURY TRIAL (Nguyen v. Countrywide, et. al.)

-10-

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

F, NOTICE OF RIGHT TO CANCEL.

43. Pursuant to *15 U.S.C. § 1635 (a), 15 U.S.C. § 1635 (i)* , and Regulation Z *(12 C.F.R § 226.15 (a) (3))*, failure to provide two properly completed Notices of Right to Cancel to the borrower extends the three-day rescission period to three years.

44. Although it would be less expensive to exercise the three year extension by sending a letter requested for rescission to the lender Countrywide, plaintiff has chosen to hire an attorney to file a Complaint and **through this Complaint, Plaintiff exercises his right of rescission, and thereby demanded rescission for Loan Transaction One and Loan Transaction Two under this Court**.

45. This Complaint was originally filed by the Law Firm of Fransen & Molinaro, LLP under Civil Case No. SACV 08-00830-CJC (PJWx) on 7/25/08.

46. The demand for extended rescission right was personal served defendant Countrywide on 07/25/08. Within 20 days from this date, Defendant Countrywide failed to return to Plaintiff any earnest money, and failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transactions.

47. The process starts with the consumer's notice to the creditor that he or she is rescinding the transaction. As the bare bones nature of the Federal Reserved Board (Hereafter "FRB") model notice demonstrates, it is not necessary to explain why the consumer is canceling. The FRB Model Notice simply says: **"I WISH TO CANCEL,"** followed by a signature and date line (Arnold v. W.D.L. Invs., Inc., 703 F.2d 848,850 (5th cir. 1983) (clear intention of TILA and Reg. Z is to make sure that the creditor gets notice of the consumer's intention to rescind)).

48. The statute and Regulation Z states that if creditor disputes the consumer's right to rescind, it should file a declaratory judgment action **within** the twenty days after receiving the rescission notice, before its deadline to

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

return the consumer's money or property and record the termination of its security interest (15USC 1625(b)).

49. Pursuant to the TILA Codified 15 U.S.C § 1635 (b), within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. **Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor its reasonable value. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it** (emphasis added).

50. Once Countrywide receives the Complaint, personal delivered from plaintiff's attorney, including but not limited to the plaintiff demanding the rescission of Loan Transaction One and Loan Transaction Two, the statute and Regulation Z mandate 3 steps to be followed:

### A. Step One of Rescission

First, by operation of law, the security interest and promissory note automatically becomes void and the consumer is relieved of any obligation to pay any finance or other charges (15 USC 1635(b); Reg. Z-226.15(d)(1),226.23(d)(1), See Official Staff Commentary § 226.23(d)(2)-1). (See Willis v. Friedman, Clearinghouse No. 54,564 (Md. Ct. Spec. App. May 2, 2002) (Once the right to rescind is exercised, the security interest in plaintiff Davis Nguyen's property becomes void ab initio)). Thus, the security interest is void and of no legal effect irrespective of whether the creditor makes any affirmative response to the notice. (See Family Financial Services v. Spencer, 677 A.2d 479 (Conn. App. 1996) (all that is required is notification of the intent to rescind, and the agreement is automatically rescinded).

It is clear from the statutory language that the court's modification authority extends only to the procedures specified by section 1635(b). The voiding of the security interest is not a procedure, in the sense of a step to be followed or an action to be taken. The statute makes no distinction between the right to rescind in 3-day or extended as neither cases nor statute give courts equitable discretion to alter TILA's substantive provisions. Also, after the security interest is voided, secured credit or/note becomes unsecured.

**B. Step Two of Rescission**

Second, since plaintiff Davis Nguyen has legally rescinded the loans transaction, the mortgage holder (Countrywide Home Loans, Inc) must return any money, including that which may have been passed on to a third party, such as a broker or an appraiser and to take any action necessary to reflect the termination of the security interest within 20 calendar days of receiving the rescission notice which has expired. The creditor's other task is to take any necessary or appropriate action to reflect the fact that the security interest was automatically terminated by the rescission within 20 days of the creditor's receipt of the rescission notice (15 USC 1635(b); Reg. Z-226.15 (d)(2), 226.23 (d)(2).

**C. Step Three of Rescission**

Plaintiff Davis Nguyen can and will tender the borrowed funds back to Countrywide. The termination of the security interest is required before tendering and step 1 and 2 have to be respected by defendant Countrywide.

51. Plaintiff pleads the Court to look for authority itself under the justice, since plaintiff is now representing himself without a lawyer. Again Plaintiff hereby requests defendant Countrywide to send him a refund of his interest payments and other loan disbursement, loan charges and payments made. Also, Countrywide is to take any necessary or appropriate action to reflect

the fact that the security interest was automatically terminated by the rescission (15 USC 1635(b); Reg.Z-226.15(d)(2), 226.23(d)(2). This requires canceling documents creating the security interest and filing release or termination statements in the public record of FREE and CLEAR TITLE to plaintiff Davis Nguyen.

**PLAINTIFF'S DECLARATORY OF EXERCISING THE RESCISSION RIGHTS OF LOAN TRANSACTION ONE AND LOAN TRANSACTION TWO:**

TO THE COURT AND TO DEFENDANTS AND THEIR ATTORNEY OF RECORD HEREIN:

52. Plaintiff Davis Nguyen hereby declares that the Defendant Countrywide's violations of the TILA, including but not limited to the failure of provide two required copies of the Notice of Right To Cancel, has extended Plaintiff with the right to rescind the transactions of Loan Transaction One and Loan Transaction Two into three years from the date executed loan documents, which will not expired until 07/24/09.

53. Plaintiff Davis Nguyen hereby declares that his attorney, the Law Firm of Fransen & Molinaro, LLP, has demanded on behalf of himself, by the Complaint filed at this Court under Civil Case No. SACV 08-00830-CJC (PJWx) on 7/25/08, the rescission of Loan Transaction One and Loan Transaction Two.

54. Plaintiff Davis Nguyen hereby declares that within 20 days from the date of 07/25/08, to the deadline of 08/14/08, defendant Countrywide failed to return to plaintiff any earnest money, and failed to take any security interest created under the transactions.

55. Plaintiff Davis Nguyen hereby declares that defendant Countrywide failed to file a declaration with the court before the date of 08/14/08 to contest the rescission right of plaintiff, if it should occur.

56. Plaintiff Davis Nguyen hereby elect to rescind the transaction of Loan Transaction One and Loan Transaction Two pursuant to the Truth In

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

1  Lending Act ("TILA") *15 U.S.C. § 1635 (a), 15 U.S.C. § 1635 (i)*, and

2  Regulation Z *(12 C.F.R § 226.15 (a) (3).*

57. Plaintiff Davis Nguyen hereby declares that he can and will tender the borrowed funds back to the lender. The termination of the security interest is required *before* tendering. Countrywide Home Loans, Inc. must respect this procedure and return any money, including that which may have been passed on to a third party, such as a broker or an appraiser and to take any action necessary to reflect the termination of the security interest within 20 calendar days of receiving this Second Rescission Notice by the Declaration of plaintiff Davis Nguyen under this Third Amended Complaint.

58. Plaintiff Davis Nguyen hereby declares that the filing of his original Complaint tolls or extends the right to bring an Action in the United States District Court to collect damages under TILA violations, as the principle of equitable tolling does apply to TILA since despite due diligence, Plaintiff Davis Nguyen could not have reasonably discovered the conceal fact the 3 days right to cancel and other TILA violations in-depth and explicitly until July 21, 2008 at about 2:00PM when he contacted an attorney and be advised of the TILA violations of defendant Countrywide.

59. WHEREFORE, Plaintiff prays for judgment and relief as more fully set forth below.

## FIRST CAUSE OF ACTION

## AGAINST DEFENDANT COUNTRYWIDE AND DOES 1-10, INCLUSIVE

## VIOLATIONS OF TILA, RIGHT TO CANCEL LOAN TRANSACTION ONE

60. Plaintiff realleges and incorporates by reference each and every allegation above as though fully set forth herein.

61. Plaintiff believes and thereon alleges that Loan Transaction One was subject to the Plaintiff's extended right of rescission as described by *15 U.S.C. § 1635 and Regulation Z § 226.23 (12C.F.R. § 226.23).*

62. On, or about, July 24, 2005, and at the time of the signing of the loan

documents, Plaintiff was left with only one copy of the Notice of Right to Cancel. The single copy of the Right to Cancel provided to Plaintiff was not properly completed as is required by TILA. In addition, Plaintiff was not provided with two Notices of the Right to Cancel as required by TILA.

63. Pursuant to *15 U.S.C. § 1635 (a), 15 U.S.C. § 1635 (i)* , and Regulation Z *(12 C.F.R § 226.15 (a) (3))*, failure to provide two properly completed Notices of Right to Cancel to the borrower extends the three-day rescission period into the Rescission Rights in Foreclosure.

64. Thus, Plaintiff has an extended right to rescind the Loan Transaction One.

65. Through the original Complaint filed and served on 07/25/08, Plaintiff has exercised his right of rescission, and thereby demanded rescission for Loan Transaction One.

66. Since Countrywide has not cancelled the security interest and return all monies paid by plaintiff Davis Nguyen within the 20 days of receipt of the original Complaint filed and served by the Law Firm of Fransen & Molinaro, LLP under Civil Case No. SACV 08-00830-CJC (PJWx) on 7/25/08, the lender Countrywide is responsible for actual and statutory damages pursuant to 15 U.S.C. § 1640 (a).

67. As a result of the aforesaid violations of the TILA and Regulation Z, pursuant to *15 U.S.C. §§ 1635 (a), 1640 (a), and 1641 (c)*, defendant Countrywide are liable to Plaintiff for:

    a. Rescission of Loan Transaction One;

    b. Termination of any security interest in Plaintiff's property created under Loan Transaction One;

    c. Return of any money or property given by the Plaintiff to anyone, including the defendant Countrywide, in connection with Loan Transaction One;

    d. Statutory damages of two thousand dollars ($2,000.00) for each of defendant Countrywide' violations;

THIRD AMENED COMPLAINT AND DEMAND FOR JURY TRIAL (Nguyen v. Countrywide, et. al.)

-16-

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

e. Forfeiture of return of loan proceeds from Loan Transaction One;

f. Actual damages in an amount to be determined at trial; and/or

g. A reasonable attorney fee.

68. WHEREFORE, Plaintiff prays for judgment and relief as more fully set forth below.

## SECOND CAUSE OF ACTION
## AGAINST DEFENDANT COUNTRYWIDE AND DOES 1-10, INCLUSIVE
## VIOLATIONS OF TILA, RIGHT TO CANCEL LOAN TRANSACTION TWO

69. Plaintiff realleges and incorporates by reference each and every allegation above as though fully set forth herein.

70. Plaintiff believes and thereon alleges that Loan Transaction Two was subject to the Plaintiffs' extended right of rescission as described by *15 U.S.C. § 1635 and Regulation Z § 226.23 (12 C.F.R. § 226.23).*

71. On, or about, 07/24/06, and at the time of the signing of the loan documents, Plaintiff was not left with any copies of the notices of the Notices of Right to Cancel. Plaintiff was not provided with two properly completed Notices of the Right to Cancel as is required by TILA.

72. Pursuant to *15 U.S.C. § 1635 (a), 15 U.S.C. § 1635 (i)*, and *Regulation Z (12 C.F.R. § 226.15 (a)(3) and 12 C.F.R. § 226.23 (a)(3)),* failure to provide two properly completed Notices of Right to Cancel to the borrower extends the three-day rescission period into the Rescission Rights in Foreclosure.

73. Thus, Plaintiff has an extended right to rescind Loan Transaction Two.

74. Through the original Complaint filed and served on 07/25/08, Plaintiff has exercised his right of rescission, and thereby demanded rescission for Loan Transaction Two.

75. Since Countrywide has not cancelled the security interest and return all monies paid by plaintiff Davis Nguyen within the 20 days of receipt of the original Complaint filed and served by the Law Firm of Fransen & Molinaro, LLP under Civil Case No. SACV 08-00830-CJC (PJWx) on 7/25/08, the

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

lender Countrywide is responsible for actual and statutory damages pursuant to 15 U.S.C. § 1640 (a).

76. As a result of the aforesaid violations of the TILA and *Regulation Z*, pursuant to *15 U.S.C. §§ 1635 (a), 1640 (a), and 1641 (c),* defendant Countrywide are liable to Plaintiff for:

    a. Rescission of Loan Transaction Two;

    b. Termination of any security interest in Plaintiff's property created under Loan Transaction Two;

    c. Return of any money or property given by the Plaintiff to anyone, including the defendant Countrywide, in connection with Loan Transaction Two;

    d. Statutory damages of two thousand dollars ($2,000.00) for each of defendant Countrywide' violations;

    e. Forfeiture of return of loan proceeds from Loan Transaction Two;

    f. Actual damages in an amount to be determined at trial; and/or

    g. A reasonable attorney fee.

77. WHEREFORE, Plaintiff prays for judgment against defendant Countrywide, and each of them, as more fully set forth below.

## THIRD CAUSE OF ACTION
## AGAINST DEFENDANT COUNTRYWIDE AND DOES 1-10, INCLUSIVE
## VIOLATIONS OF TRUTH IN LENDING ACT (TOLERANCES FOR ACCURACY)

78. Plaintiff realleges and incorporates by reference each and every allegation above as though fully set forth herein.

79. The TILA *Codified to 15 U.S.C. 1605 § 106 (f)*, TOLERANCES FOR ACCURACY, defines the disclosure of the finance charge as being accurate for purposes of this title if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $100. In the Event of a foreclosure, the disclosed finance charge can not be understated by more than $35.

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

80. The Good Faith Estimate, Section 1200 "Government Recording & Transfer Charges of $90, while in the Settlement Statement HUD-1, Section 1200, line 1201 showed an amount charge of $145, a variance of **-$55.00**. This variance was exceeded the TOLERANCES FOR ACCURANCY $35 in the Event of a foreclosure of the TILA *Codified to 15 U.S.C. 1605 § 106 (f)*.

81. Furthermore, defendant Countrywide wrongful charged Plaintiff $80.00 for "Tax Service to Countrywide Home Loans" (Line 806 of The Settlement Statement HUD-1), allegedly for legal services, when allegedly Countrywide is not legal to charge for such legal fee.

82. WHEREFORE, Plaintiff prays for judgment and relief as more fully set forth below.

<u>**FOURTH CAUSE OF ACTION**</u>
<u>**AGAINST DEFENDANT COUNTRYWIDE AND DOES 1-10, INCLUSIVE**</u>
<u>**VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200**</u>
<u>**ON LOAN TRANSACTION ONE**</u>
<u>**(FRAUDULENT BUSINESS ACT OR PRACTICE)**</u>

83. Plaintiff realleges and incorporates by reference each and every allegation above as though fully set forth herein.

84. California Business and Professions Code §17200, *et seq.* prohibits acts of unfair competition, which mean, and include, any "fraudulent business act or practice." Conduct which is "likely to deceive" is "fraudulent" within the meaning of Section 17200.

85. As more fully described below, defendant's acts and practices are likely to deceive, constituting a fraudulent business act or practice.

86. At the time of financing the Subject Loan, plaintiff had an very good credit rating at 780 scores and was re-financed by Defendants Countrywide as his primary residence.

87. Prior to entering into the Subject Loan, Plaintiff gave accurate financial information, including his approximate income, required by defendant

through its employee Aaron Gale, who said that Plaintiff did in fact qualify for one of their loan programs.

88. On or about 07/24/06, Plaintiff executed loan documents prepared and tendered by defendant and its employee, Aaron Gale, for the Subject Loan. Included in the loan documents were, among other things, a purported Adjustable Rate Rider which sets forth repayment terms that did not, nor could they have, reflected the actual interest payments necessary to pay the Subject Loan in full over the term of the loan.

89. Plaintiff believes and therefore alleges that the Adjustable Rate Rider **contained conflicted statements for the term of the interest rates**. On Page 2 of the Adjustable Rate Ride, Section (A) Interest Rate, it stated: "I will pay interest at a YEARLY RATE OF 2.5%". On Page 3 of the ARR, Payment Change Dates, it stated: "My monthly payment may change as required by Section 3(D) below beginning on the first day of SEPTEMBER, 2007, and on that day every 12th month thereafter". Any disclosure that is conflicted to these statements, i.e., as if the interest may change every month rather than every 12th month thereafter SEPTEMBER 2007, would make the ARR failed the requirement of "clear and conspicuous." **The ARR, therefore, has false on its face.**

90. Another "likely to deceive" is the action of the defendant's employee/interviewer Aaron Gale, who marketed, sold or negotiated the terms of Loan Transaction One and Loan Transaction Two with Plaintiff Davis Nguyen.

91. Plaintiff are therefore entitled to the relief available under Business and Professions Code §17200, *et seq.*, as detailed below.

92. Upon further review of Loan Transaction One and on line research, the loan was found to contain fraudulent misrepresentation by the loan originator by the fact that:

A. The loan application printed on 07/24/06 indicates the loan officer of

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

record to be Aaron Gale who is employed by Countrywide Home Loans Inc., with an address of 101 Main Street, Huntington Beach, CA. The phone number disclosed on the loan application is 714-969-3600. Page 3 of the Loan Application indicates the document was signed by Aaron T. Gale. The title used by Aaron Gale on this document was that of "Interviewer", and the "Name and Address of Interviewer's Employer" was Countrywide Home Loans Inc. By acknowledging this Loan Application, Aaron Gale is the interviewer/loan officer of record of the loan application;

B.    The State of California, Department of Real Estate requires that the broker report any additional addresses to the DRE. For instance, if the broker/associate will be conducting licensed activities at the address of the employing broker/lender, then the broker associate must add this additional address to his or her license as a "branch" address if is different from the main office. The broker of record of this office is Jon Levin. Jon Levin never registered his license as being "active" with Countrywide Home Loans, Inc. Therefore this address is NOT a branch office of Countrywide Home Loans, Inc.

C.    Base on the aforementioned information, Countrywide fraudulently disclosed that it was the employer of the interviewer/loan officer on the loan application, while Aaron Gale does not hold a license to discuss the conditions and terms of the loans with Plaintiff.

93.  The Uniform Residential Application clearly indicated that the employer of Aaron Gale is Countrywide Home Loans, Inc. Aaron Gale was employed by defendant, not by any broker nor by someone else. Defendant, therefore, is the direct cause of the violations of California Business & Profession Code § 17200, § 17203, § 17207 for failure to hire a properly licensed interviewer to comply with this code.

94.  At all relevant times, defendant knew or realized that Aaron Gale was

engaging in or planned to engage in the violations of California Business & Profession Code § 17200, § 17203, § 17207 as Plaintiff alleging in this Fourth Cause of Action. Knowing or realizing that Aaron Gale was engaging in or planning to engage in unlawful conduct, defendant Countrywide nevertheless facilitated the commission of those unlawful acts. Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted its employee, Aaron Gale, in the unlawful conduct.

95. Defendant Countrywide paid its employee Aaron Gale compensation in the form of commission or rebates to induce this interviewer to place plaintiff in the Option ARM loan that would earn Defendant the greatest profit on the secondary market, regardless of whether the loan were in the best interest of, or appropriate, for plaintiff Davis Nguyen.

96. Paying compensation to defendants' employee/interviewer that was not reasonably related to the value of the brokerage services by his performed, defendant Countrywide has violated to California Business & Profession Code § 17200, § 17203, § 17207. Defendant can not hide its wrongful act under the exemption of Lender. In this action, defendant has acted both as Lender and Brokerage by itself, through and with its employee Aaron Gale.

97. Therefore, plaintiff is entitled to receive back from defendant the return twice of any bonus, brokerage, or commission that was not reasonably related to the value of the brokerage services by his performed, based on a 6% rebate fees, in an amount to be determined at trial but, at a minimum, in an amount equal or greater than $62,100 in connection with the Subject Loan.

## FIFTH CAUSE OF ACTION

## AGAINST DEFENDANT COUNTRYWIDE AND DOES 1-10, INCLUSIVE

### (Unfair Business Act or Practice in Violation of *California B & P Code § 17200, § 17203, § 17207, et. seq.*)

98. Plaintiff realleges and incorporates by reference each and every allegation

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

above as though fully set forth herein.

99. *California Business and Professions Code Section 17200, et seq.*, including *Business and Professions Code Section 17203, § 17207* defines "unfair competition" as any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.

## Unfair

100. Plaintiff believes and thereon alleges that in a loan transaction consumers depend on information provided by creditors such as defendant Countrywide who are in a superior position in the loan transaction in that they have a professional understanding of the mortgage business.

101. Plaintiff believes and thereon alleges that defendant Countrywide's employee, Aaron Gale, who acted unethically and deceptively when he mislead Plaintiff by explaining the terms of the loan considerably different than the actual terms.

102. Plaintiff believes the defendant Countrywide has violated the TILA *Codified 15 U.S.C. 1606 § 107(a)(2)*, by misleading Plaintiff about the interest charge based on a yearly rate. Page 2 of the ARR wrote: "I will pay interest at a YEARLY RATE of 2.500%". Indeed, this interest rate was a MONTHLY RATE. This rate was good for the first three months of the loan terms only.

103. Plaintiff has reviewed and summarized the monthly interest rates defendant Countrywide charged into the Subject Loan as follows:

**MONTHLY RATES CHARGED TO THE SUBJECT LOAN**

| Date | Interest Rate |
|------|---------------|
| Sep 2006 | 2.500 % |
| Oct 2006 | 2.500 % |
| Nov 2006 | 8.125 % |
| Dec 2006 | 8.250 % |

| Jan 2007 | 8.250 % |
| Feb 2007 | 8.375 % |
| Mar 2007 | 8.375 % |
| Apr 2007 | 8.500 % |
| May 2007 | 8.500 % |
| Jun 2007 | 8.500 % |
| Jul 2007 | 8.500 % |
| Aug 2007 | 8.375 % |

**AVERAGED INTEREST RATE CHARGED IN THE FIRST YEAR: 7.40%**

104. The averaging yearly rate defendant Countrywide charged in the first year was **7.40 %.** The "yearly rate" per defendant disclosed on the ARR of **2.50%** was a misleading, a variance of **- 4.90 %.** Therefore Plaintiff believes defendant violated the TILA *Codified 15 U.S.C. 1606 § 107(c)*: The disclosure of an annual percentage rate is accurate for the purpose of this title if the rate disclosed is within a tolerance not greater than one-eighth of 1 per centum more or less than the actual rate or rounded to the nearest one-fourth of 1 per centum.

105. Plaintiff believes defendant used deceptive tactics to push Plaintiff into complicated, risky, and expensive 3 Months Option ARM at very low initial or "teaser" interest rate of 2.50%. Defendant misrepresented or hid the fact that to obtain this type of loan, Plaintiff would experience dramatic increases in monthly payments.

106. Defendant obscured the negative effects--including rising rates and negative amortization--would inevitably result from making minimum payment or trying to refinance. In that case, Plaintiff may again have to pay commissions, fees, and expenses for the arranging of the new loan. Option ARM mortgages enabled borrowers to pay only minimal amounts at the start of the loans. But those initial payments often did not cover even the interest

that was due, and the loan balances then ballooned.

107. The Defendant Countrywide and its employees are loan professionals and drafted the documents presented to Plaintiff. Because their documents were not clear and conspicuous, they were misleading and unfair to Plaintiff who relied on their purported accuracy in making his decision about whether to accept the mortgage.

**Unlawful**

108. Defendant Countrywide's foregoing actions are unlawful, because as set forth above in each cause of action Defendant have violated federal lending laws.

109. Plaintiff believes and thereon alleges that Defendant Countrywide were aware that the oral explanations by Aaron Gale given to Plaintiff were untrue and/or misleading.

110. Plaintiff believes and thereon alleges that Defendant Countrywide were aware that the written disclosures given to Plaintiff by Aaron Gale were untrue and/or misleading.

111. Defendant Countrywide engaged in said unfair and/or unlawful business practices intentionally, willfully and in bad faith.

112. As a direct and proximate result of Defendant Countrywide's actions, as herein alleged, Plaintiff has suffered damages in an amount to be determined at trial, which will include, but not limited to, interest, loan transaction costs, credit history damage, and possibly loss of his home.

113. Plaintiff is informed and believes, and based on thereon alleges, that Defendant Countrywide' unfair acts as described above are serious and continuing threat to Plaintiff and the public. If Defendant Countrywide are allowed to continue their wrongful acts, other borrowers and the Plaintiff will be faced with losing their homes to foreclosure. Widespread foreclosure results in unstable neighborhoods and declining property values.

114. WHEREFORE, Plaintiff prays for judgment against Defendant Countrywide,

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

and each of them, as more fully set forth below.

**WHEREFORE PLAINTIFF PRAYS JUDGMENT AS FOLLOWS:**

**FOR THE FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATIONS OF TILA-- RIGHT TO CANCEL LOAN TRANSACTION ONE, PLAINTIFF PRAYS FOR:**

115. Rescission of Loan Transaction One;

116. Termination of any security interest in Plaintiff's property created under Loan Transaction One;

117. Return of any money or property given by the Plaintiff to anyone, including the Defendant Countrywide, in connection with Loan Transaction One;

118. Statutory damages of two thousand dollars ($2,000.00) for each of Defendant Countrywide' violations;

119. Forfeiture of return of loan proceeds from Loan Transaction One;

120. Actual damages in an amount to be determined at trial; and/or

121. A reasonable attorney fee.

**FOR THE SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATIONS OF TILA-- RIGHT TO CANCEL LOAN TRANSACTION TWO, PLAINTIFF PRAYS FOR:**

122. Rescission of Loan Transaction Two;

123. Termination of any security interest in Plaintiff's property created under Loan Transaction Two;

124. Return of any money or property given by the Plaintiff to anyone, including the Defendant Countrywide, in connection with Loan Transaction Two;

125. Statutory damages of two thousand dollars ($2,000.00) for each of Defendant Countrywide' violations;

126. Forfeiture of return of loan proceeds from Loan Transaction Two;

127. Actual damages in an amount to be determined at trial; and/or

128. A reasonable attorney fee.

**FOR THE THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR**

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

## VIOLATIONS OF TILA

129. Rescission of Loan Transaction One;

130. Termination of any security interest in Plaintiff's property created under Loan Transaction One;

131. Return of any money or property given by the Plaintiff to anyone, including the Defendant, in connection with Loan Transaction One;

132. Statutory damages of two thousand dollars ($2,000.00) for each of Defendant' violations;

133. Forfeiture of return of loan proceeds from Loan Transaction Two;

134. Actual damages in an amount to be determined at trial; and/or

135. A reasonable attorney fee.

## FOR THE FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, ET.SEQ., FOR LOAN TRANSACTION ONE PLAINTIFF PRAYS FOR:

136. For restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendant Countrywide, as a result of unlawful and unfair business acts or practices for Loan Transaction One;

137. Statutory damages of six thousand dollars ($6,000.00) for each of Defendant Countrywide' violations, per California B& P Code § 17207;

138. For any and all civil penalties for each unlawful violation, as determined by the Court;

139. For costs of suit incurred herein, and/or;

140. Reasonable attorney's fees as allowed by statute.

## FOR THE FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, ET.SEQ., FOR LOAN TRANSACTION ONE PLAINTIFF PRAYS FOR:

141. For restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendant

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

Countrywide, as a result of unlawful and unfair business acts or practices for Loan Transaction One;

142. Statutory damages of six thousand dollars ($6,000.00) for each of Defendant Countrywide' violations, per California B& P Code § 17207;

143. For any and all civil penalties for each unlawful violation, as determined by the Court;

144. For costs of suit incurred herein, and/or;

145. Reasonable attorney's fees as allowed by statute.

**FOR ALL CAUSES OF ACTION AND AGAINST ALL DEFENDANTS PLAINTIFF PRAY FOR ENJOINMENT THROUGH TEMPORATRY RESTRAINING ORDER AND/OR PREMINARY INJUNCTION**

146. Foreclosure proceedings and foreclosure will cause Plaintiff to suffer further immediate and irreparable injury, loss, and damage. Thus, Plaintiff is informed and believes, and based thereon alleges, that, in the absence as prayed for below, Defendant Countrywide will continue to wrongfully cause damage Plaintiff through penalties, late fees, foreclosure, adverse credit reporting, and other harmful acts against Plaintiff.

147. Plaintiff prays for an order requiring Defendant Countrywide to show cause why Defendant Countrywide should not be enjoined as hereinafter set forth, during the pendency of this action; and/or

148. Plaintiff prays for a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendant Countrywide, their representatives, their agents, or their assignees, and all persons acting under, in concert with or for them, from foreclosing on the Subject Property or offering to sell or transfer, selling, in any way transferring title to the Subject Property, and/or taking any adverse actions against Plaintiff's credit scores or worthiness;

**FOR ALL CAUSES OF ACTION AND AGAINST ALL DEFENDANTS**

149. For cost of suit; and/or

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

150. For such other and further relief as the court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Dated: _____ 09 /25/ 2009 _____

By: _____ Davis Nguyen _____ DAVIS NGUYEN _____

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A
## PURPORTED LOAN APPLICATION

Prepared by: JESUS CALDERON

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____

Co-Borrower _____

## TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | VA ☐  Conventional ☐  Other (explain): X | | Agency Case Number | Lender Case Number 141245163 |
|---|---|---|---|---|
| | FHA ☐  USDA/Rural Housing Service ☐ | | | |

| Amount $908,000.00 | Interest Rate 2.500 % | No. of Months 360 | Amortization Type: | Fixed Rate ☐   Other (explain): GPM ☐   ARM (type): X   NCARM MTA 3mo Intro PO 1yrHPP |

## III. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 21359 ESTEPA CIRCLE, Huntington Beach, CA 92648-5399 | | No. of Units 1 |
|---|---|---|
| Legal Description of Subject Property (attach description if necessary) LOT 15 TRACT 15549 CITY OF HUNTINGTON BEACH COUNTY OF ORANGE | | Year Built 2004 |

| Purpose of Loan | Purchase ☐   Construction ☐ | Other (explain): | Property will be: | Primary X Residence | Secondary Residence ☐ | Investment ☐ |
|---|---|---|---|---|---|---|
| | Refinance X   Construction-Permanent ☐ | | | | | |

| Complete this line if construction or construction-permanent loan. | | | | | |
|---|---|---|---|---|---|
| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |

| Complete this line if this is a refinance loan. | | | | |
|---|---|---|---|---|
| Year Acquired 2004 | Original Cost $ 842,957.00 | Amount Existing Liens $ 906,881.00 | Purpose of Refinance DEBT CNSOLDATN/OTHER | Describe Improvements ☐ made ☐ to be made   Cost: $ 0.00 |

| Title will be held in what Name(s) DAVIS T NGUYEN | Manner in which Title will be held , A SINGLE MAN | Estate will be held in: Fee Simple X |
|---|---|---|
| | | Leasehold ☐ (show expiration date) |

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)
SAVINGS/CHECKING

## III. BORROWER INFORMATION

| Borrower | | | | Co-Borrower | | | |
|---|---|---|---|---|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) DAVIS T. NGUYEN | | | | Co-Borrower's Name (include Jr. or Sr. if applicable) | | | |
| Social Security Number 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 | Home Phone (incl. area code) (714) 262-5728 | DOB (mm/dd/yyyy) 08/20/1960 | Yrs. School 16 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
| Married ☐  Unmarried (include single, divorced, widowed) X  Separated ☐ | | Dependents (not listed by Co-Borrower) no. 0  ages | | Married ☐  Unmarried (include single, divorced, widowed) ☐  Separated ☐ | | Dependents (not listed by Borrower) no.  ages | |
| Present Address (street, city, state, ZIP) Own X  Rent ☐  01/05 No. Yrs. 21359 Estepa Cir Huntington Beach, CA 92648-5399 | | | | Present Address (street, city, state, ZIP) Own ☐  Rent ☐   No. Yrs. | | | |
| Mailing Address, if different from Present Address 21359 ESTEPA CIR HUNTINGTON BEACH, CA 92648-5399 | | | | Mailing Address, if different from Present Address | | | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) Own X  Rent ☐  01/04 No. Yrs. 7671 TIMBER CIR HUNTINGTON BEACH, CA 92648-1915 | | | | Former Address (street, city, state, ZIP) Own ☐  Rent ☐   No. Yrs. | | | |
|---|---|---|---|---|---|---|---|

## IV. EMPLOYMENT INFORMATION

| Borrower | | | Co-Borrower | | |
|---|---|---|---|---|---|
| Name & Address of Employer CB RICHARD ELLIS 100 N. SEPULVEDA BLVD. EL SEGUNDO, CA 90245-4359 | Self Employed ☐ | Yrs. on this job 06Yrs 05Mos   Yrs. employed in this line of work/profession 11 | Name & Address of Employer | Self Employed ☐ | Yrs. on this job   Yrs. employed in this line of work/profession |
| Position/Title/Type of Business PRGRMR ANALYST/R/E SERVICES | Business Phone (incl. area code) (310) 606-5236 | | Position/Title/Type of Business | Business Phone (incl. area code) | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | Self Employed ☐ | Dates (from - to)   Monthly Income $ | Name & Address of Employer | Self Employed ☐ | Dates (from - to)   Monthly Income $ |
|---|---|---|---|---|---|
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |
| Name & Address of Employer | Self Employed ☐ | Dates (from - to)   Monthly Income $ | Name & Address of Employer | Self Employed ☐ | Dates (from - to)   Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

*EXH.A1*


*23991*    *141245163000000202 1N*

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 19000.00 | $ 0.00 | $ 19000.00 | Rent | 0.00 | |
| Overtime | 0.00 | 0.00 | 0.00 | First Mortgage (P&I) | 2331.70 | $ 3,587.70 |
| Bonuses | 0.00 | 0.00 | 0.00 | Other Financing (P&I) | 1806.60 | 1,177.40 |
| Commissions | 0.00 | 0.00 | 0.00 | Hazard Insurance | 0.00 | 0.00 |
| Dividends/Interest | 0.00 | 0.00 | 0.00 | Real Estate Taxes | 762.39 | 762.39 |
| Net Rental Income | 0.00 | 0.00 | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | 0.00 | 0.00 | Homeowner Assn. Dues | 372.00 | 372.00 |
| | | | | Other: | 0.00 | 0.00 |
| Total | $ 19000.00 | $ 0.00 | $ 19000.00 | Total | $ 5272.69 | $ 5899.49 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income Notice:** Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.  Completed [ ] Jointly [X] Not Jointly

| ASSETS | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Description | | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| Cash deposit toward purchase held by: | $ | Name and address of Company | $ Payment/Months | 906881.00 |
| | $ | TOTAL MORTGAGE OBLIGATIONS FROM THE SCHEDULE OF REAL ESTATE OWNED | 4138.30 PER MONTH | |
| **List checking and savings accounts below** | | | | |
| Name and address of Bank, S&L, or Credit Union BANK OF AMERICA | | | | |
| | | Acct. no. TAXES/INS/MAINT./ETC. | 1134.39 | |
| Account Type: CHECKING | | Name and address of Company AMEX | $ Payment/Months 4 PMTS @ 10.00 PER MONTH | $ 44.00 |
| Acct. no. 0932831925 | $ 35823.21 | | | |
| Name and address of Bank, S&L, or Credit Union | | Acct. no. -40394144001434464 | | |
| | | Name and address of Company COUNTRYWIDE HOME LOANS | $ Payment/Months 122 PMTS @ 1806.00 PER MONTH | 221000.00 |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | Acct. no. 122668031 | | |
| | | Name and address of Company TOYOTA MOTOR CREDIT CO | $ Payment/Months 9 PMTS @ 556.00 PER MONTH | $ 5111.00 |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | Acct. no. 70400163043900001 | | |
| | | Name and address of Company WFFNATBANK | $ Payment/Months 19 PMTS @ 77.00 PER MONTH | $ 1490.00 |
| Acct. no. | $ | | | |
| Stocks & Bonds (Company name/number & description) | $ | | | |
| | | Acct. no. 7490013545 | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ 0.00 | | | | |
| **Subtotal Liquid Assets** | $ 35823.21 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | 1200000 | Acct. no. | | |
| Vested interest in retirement fund | 0.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | **Total Monthly Payments** | $ 7721.69 | |
| **Total Assets a.** | $ 1235823.21 | Net Worth (a minus b) $ 101297.21 | **Total Liabilities b.** | $ 1134526.00 |

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05

VMP®-21N (0507)   CHL (09/05)

Application 1 of 1
Page 2 of 4

*Exh. A2*

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| SEE ATTACHED REO SCHEDULE | | $ | $ | $ | $ | $ | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Totals | | $ 1200000 | $ 906881 | $ 0 | $ 4138 | $ 1134 | $ 0 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| THUY NGUYEN | | |
| DAVID NGUYEN | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. Purchase price | $ | 0.00 |
| b. Alterations, improvements, repairs | | 0.00 |
| c. Land (if acquired separately) | | 0.00 |
| d. Refinance (incl. debts to be paid off) | | 906,881.00 |
| e. Estimated prepaid items | | 62.19 |
| f. Estimated closing costs | | 541.00 |
| g. PMI, MIP, Funding Fee | | 0.00 |
| h. Discount (if Borrower will pay) | | 0.00 |
| i. Total costs (add items a through h) | | 907,484.19 |
| j. Subordinate financing | | 127,000.00 |
| k. Borrower's closing costs paid by Seller | | 0.00 |
| l. Other Credits (explain) OTHER EQUITY | | 0.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | | 908,000.00 |
| n. PMI, MIP, Funding Fee financed | | 0.00 |
| o. Loan amount (add m & n) | | 908,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | | -127,515.81 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information. | CO-BORROWER | ☐ I do not wish to furnish this information. |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino  ☒ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino  ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native  ☒ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White | Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White |
| Sex: | ☐ Female  ☒ Male | Sex: | ☐ Female  ☐ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) AARON GALE | Name and Address of Interviewer's Employer COUNTRYWIDE HOME LOANS, INC. |
|---|---|---|
| ☐ Face-to-face interview | Interviewer's Signature | Date | |
| ☐ Mail | | 101 MAIN STREET |
| ☒ Telephone 06/28/2006 | Interviewer's Phone Number (incl. area code) | HUNTINGTON BEACH, CA 92648 |
| ☐ Internet | (714) 969-3600 | |

EXH. A3

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark **B** for Borrower or **C** for Co-Borrower. | Borrower:  DAVIS T. NGUYEN | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number:  141245163 |

**III. Borrower Information (Continued)**

| Borrower | | Co-Borrower |
|---|---|---|
| Borrower's Primary EMail Address  EXCELLENCE_2001@YAHOO.COM | | Co-Borrower's Primary EMail Address |
| Borrower's Secondary EMail Address | | Co-Borrower's Secondary EMail Address |

No Additional Information Required

**Under California Civil Code 1812.30(j) "Credit applications for the obtainment of money, goods, labor, or services shall clearly specify that the applicant, if married, may apply for a separate account."**

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| **X** | | **X** | |

 VMP®-21N (0507)      CHL (09/05)

*EXH. A4*

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05

~~Dang Nguyen~~
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

**EXHIBIT B**
**THE GOOD FAITH ESTIMATE VS. SETTLEMENT STATEMENT**

LOAN #: 141245163          CASE #:

Lender: COUNTRYWIDE HOME LOANS, INC.

Prepared by: JESUS CALDERON

# GOOD FAITH ESTIMATE

Sales Price: N/A
Base Loan Amount: 908,000.00
Total Loan Amount: 908,000.00
Type of Loan: CONV UNINSURED
Date Prepared: 07/24/2006

Address: 4500 Park Granada
          Calabasas, CA 91302-1613

Applicant(s): DAVIS T. NGUYEN

Property Address: 21359 ESTEPA CIRCLE
                  Huntington Beach, CA 92648-5399

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.

The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Interest rate 2.500 %                                   Term of loan  30      Years

| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN | | |
|---|---|---|---|
| 801 | $ | | Loan Origination Fee _____ 0.000 % |
| 802 | $ 0.00 | | Loan Discount _____ 0.000 % |
| 803 | $ 572.00 | **POC-L | Appraisal        - Paid To: Appraiser |
| 804 | $ 35.00 | **POC-L | Credit Report    - Paid To: Credit Reporting Agency |
| 805 | $ 0.00 | | Lender's Inspection |
| 806 | $ 0.00 | | Mortgage Insurance Application Fee |
| 807 | $ 0.00 | | Assumption Fee |
| 808 | $ 0.00 | | Warehouse Fee |
| 809 | $ 390.00 | POC-L | Processing Fee |
| 810 | $ 90.00 | POC-L | Tax Service      - Paid To: Tax Service Provider |
| 811 | $ 26.00 | POC-L | Flood Check Fee  - Paid To: Flood Service Provider |
| 813 | $ 0.00 | | Wire Transfer |
| 814 | $ 0.00 | | Buydown Expense |
| 815 | $ 250.00 | POC-L | Document Preparation-Lender |
| 816 | $ 250.00 | POC-L | Underwriting Fee |
| 817 | $ | | |
| 818 | $ | | |
| 819 | $ | | |
| 820 | $ | | |
| 821 | $ | | |
| 822 | $ | | |
| 823 | $ | | |

| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | |
|---|---|---|---|
| 901 | $ 62.19 | 1 Days Interest @ $ 62.19 /Day | Financed $ |
| 902 | $ 0.00 | Conventional PMI/FHA Up-front MIP/VA Funding Fee | Paid Cash $ |
| 903 | $ 0.00 | Hazard Insurance Premium | |
| 904 | $ 0.00 | | |
| 905 | $ | | |

| 1000 | RESERVES DEPOSITED WITH LENDER | | | | |
|---|---|---|---|---|---|
| 1001 | $ 0.00 | Hazard Insurance | 0 Months @ $ | 0.00 | /month |
| 1002 | $ 0.00 | Mortgage Insurance | 0 Months @ $ | 989.50 | /month |
| 1003 | $ 0.00 | Taxes | 0 Months @ $ | 0.00 | /month |
| 1004 | $ 0.00 | Taxes | 0 Months @ $ | 0.00 | /month |
| 1005 | $ 0.00 | Taxes | 0 Months @ $ | 0.00 | /month |
| 1006 | $ 0.00 | Flood Insurance | 0 Months @ $ | 0.00 | /month |
| 1007 | $ 0.00 | Aggregate Analysis Adjustment | | | |

| 1100 | TITLE CHARGES | | |
|---|---|---|---|
| 1101 | $ 550.00 | POC-L | Closing or Escrow Fee |
| 1102 | $ 0.00 | | Abstract or Title Search |
| 1103 | $ 0.00 | | Title Examination |
| 1104 | $ 0.00 | | Title Insurance Binder |
| 1105 | $ 0.00 | | Document Preparation |
| 1106 | $ 150.00 | POC-L | Notary |
| 1107 | $ 0.00 | | Attorney/Settlement Agent |
| 1108 | $ 1,929.00 | POC-L | Title Insurance |
| 1109 | $ 100.00 | POC-L | Title Insurance Endorsement |
| 1110 | $ 125.00 | | SubEscrow Fee |
| 1111 | $ 84.00 | POC-L | Courier/Express Mail-Clsng |

| 1200 | GOVERNMENT RECORDING & TRANSFER CHARGES | | |
|---|---|---|---|
| 1201 | $ 90.00 | POC-L | Recording Fees |
| 1202 | $ 0.00 | | City/County Tax/Stamps |
| 1203 | $ 0.00 | | State Tax/Stamps |
| 1204 | $ 0.00 | | |

| 1300 | ADDITIONAL SETTLEMENT CHARGES | |
|---|---|---|
| 1301 | $ 0.00 | Survey |
| 1302 | $ 0.00 | Pest Inspection |
| 1303 | $ 0.00 | Well and Septic Tank Inspection Fee |
| 1304 | $ 0.00 | |

$ 187.19    TOTAL ESTIMATED BORROWER SETTLEMENT CHARGES
            "S" next to an item designates a cost to be paid by Seller (Not included in the total).
            "POC-L" next to an item designates a cost paid by the Lender (Not included in the total).
            "POC-B" next to an item designates a cost paid by the Borrower (Included in the total).

**Lender requires the use of a particular provider for this settlement service. See attached for additional information.

* 2 3 9 9 1 *                                                                    * 1 4 1 2 4 5 1 6 3 0 0 0 0 0 2 C 4 1 0 *



*EXH. B1*

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | TOTAL ESTIMATED MONTHLY PAYMENT | |
|---|---|---|---|
| $ | N/A Downpayment | $ 3,587.70 | Principal and Interest |
| $ | 125.00 Estimated Closing Costs | $ 762.39 | Taxes |
| $ | 62.19 Estimated Prepaid Items/Reserves | $ 0.00 | Hazard & Flood Insurance |
| $ | Other | $ 0.00 | Mortgage Insurance |
| $ | Financed PMI/MIP/VA Funding Fee | $ 4,350.09 | TOTAL MONTHLY PAYMENT* |
| $ | 187.19 TOTAL | | |

These estimates of closing costs are provided pursuant to the Real Estate Settlement Procedures Act (RESPA). If your loan application is for a first lien residential mortgage and is made in a transaction to purchase a home, additional important information can be found in the HUD Special Information Booklet provided to you by your lender or mortgage broker.

### DISCLOSURES CONCERNING REQUIRED USE OF SETTLEMENT SERVICE PROVIDERS

If an estimated charge shown on page 1 is identified with a double asterisk (**), the lender requires the use of a particular provider of that settlement service. The estimated charge shown is based on the charges of the designated provider. The relationship between the lender and the settlement service provider is that the lender has repeatedly used the provider's services in the past. The lender may decide to choose a different provider, the HUD-1 or HUD- 1A statement given to you at settlement will disclose the provider used. SEE ACCOMPANYING CONTROLLED BUSINESS ARRANGEMENT DISCLOSURE REGARDING THE RELATIONSHIP BETWEEN THE LENDER AND LANDSAFE APPRAISAL SERVICES, INC.

* * APPRAISER * *
The Lender will require an appraisal from an appraiser we select from our approved list.
* * CREDIT BUREAU * *
Landsafe Credit Services, Inc.
1515 Walnut Grove Ave, MSN = RM-162, Rosemead, CA 91770
1-800-475-9516
This company is an affiliate of the lender.

* Does not include Optional Insurance.

| | |
|---|---|
| Applicant _____ Date | Applicant _____ Date |
| DAVIS T. NGUYEN | |
| Applicant _____ Date | Applicant _____ Date |

EXH. B2

# TRANS-NATIONAL ESCROW

Form Approved OMB No. 2502-0265

HUD-1 Rev.7/95

| A. | Trans-National Escrow Corporation 12802 Valley View Street, Suite 5 Garden Grove, CA 92845 | | B. TYPE OF LOAN | | |
|---|---|---|---|---|---|
| | | | 1 ___ FHA | 2 ___ FmHA | 3 ___ CONV. UNINS. |
| | | | 4 ___ VA | 5 ___ CONV. INS | |
| | | | 6. File Number (Escrow) 40973-ML | | 7. Loan Number 141245163 |
| | | | 8. Mortgage Insurance Case Number: | | |

### SETTLEMENT STATEMENT

| C. NOTE: | This form is furnished to give you a statement of actual settlements costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals. | F. NAME OF LENDER: Countrywide Home Loans 101 Main Street, Suite 400 Huntington Beach, CA 92648 |
|---|---|---|

| D. NAME OF BORROWER | E. NAME OF SELLER: | |
|---|---|---|
| Davis T. Nguyen 21359 Estepa Circle Huntington Beach, CA 92648 | | I. SETTLEMENT DATE: 8/1/2006 DISBURSEMENT DATE: |
| G. PROPERTY LOCATION | H. SETTLEMENT AGENT: Trans-National Escrow Corporation | |
| 21359 Estepa Circle Huntington Beach, CA 92648 | PLACE OF SETTLEMENT: 12802 Valley View Street, Suite 5, Garden Grove, CA 92845 | ESCROW NO: 40973-ML |

| J. | SUMMARY OF BORROWER'S TRANSACTION | | K. | SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|---|---|
| 100 | GROSS AMOUNT DUE FROM BORROWER: | | 400 | GROSS AMOUNT DUE TO SELLER: | |
| 101 | Contract Sales Price | | 401 | Contract Sales price | |
| 102 | Personal property | | 402 | Personal property | |
| 103 | Settlement Charges to borrower (line 1400) | $126,951.19 | 403 | Impound Credit | |
| 104 | | | 404 | | |
| Adjustments for items paid by seller in advance | | | Adjustments for items paid by seller in advance | | |
| 106 | City/Town taxes | | 406 | City/Town taxes | |
| 107 | County taxes | | 407 | County taxes | |
| | | | 408 | | |
| 108 | | | 409 | | |
| 109 | Payoff To: Countrywide (see detail) | $690,188.22 | 410 | | |
| 110 | Payoff To: Countrywide (see detail) | $223,016.75 | 411 | | |
| 111 | | | 412 | | |
| 112 | | | 413 | | |
| 113 | | | 414 | | |
| 114 | | | 415 | | |
| 115 | | | 416 | | |
| 116 | | | 417 | | |
| 117 | | | 418 | | |
| 118 | | | 420 | GROSS AMOUNT DUE TO SELLER | |
| 120 | GROSS AMOUNT DUE FROM BORROWER | $1,040,156.16 | 500 | REDUCTIONS IN AMOUNT DUE TO SELLER: | |
| 200 | AMOUNTS PAID BY OR IN BEHALF OF BORROWER: | | 501 | Excess deposit (see inst.) | |
| 201 | Deposit or earnest money | $6,273.62 | 502 | Settlement charges to seller (line 1400) | |
| 202 | Principal amount of new loan(s) | $908,000.00 | 503 | Existing loan(s) taken subject to | |
| 203 | Existing loan(s) taken subject to | | | | |
| | | | 504 | Payoff of first mortgage loan (see detail) | |
| 204 | Second Mortgage Loan | $127,000.00 | | Interest Adjustment $ | |
| | | | | Interest Deficit $ | |
| 205 | | | 505 | Payoff of second mortgage loan | |
| | | | | Interest Adjustment $ | |
| 206 | | | 507 | | |
| | | | 508 | | |
| | | | 509 | | |
| Adjustments for items unpaid by seller | | | Adjustments for items unpaid by seller | | |
| 210 | City/Town taxes | - | 510 | City/Town taxes | - |
| 211 | County taxes | - | 511 | County taxes | - |
| 212 | | | 512 | | |
| 213 | | | 513 | | |
| 214 | | | 514 | | |
| 215 | | | 515 | | |
| 216 | | | 516 | | |
| 217 | | | 517 | | |
| 218 | | | 518 | | |
| | | | 519 | | |
| 220 | TOTAL PAID BY/FOR BORROWER | $1,041,273.62 | 520 | TOTAL REDUCTION AMOUNT DUE SELLER | |
| 300 | CASH AT SETTLEMENT FROM/TO BORROWER: | | 600 | CASH AT SETTLEMENT TO/FROM SELLER: | |
| 301 | Gross amount due from borrower (line 120) | $1,040,156.16 | 601 | Gross amount due to seller (line 420) | |
| 302 | Less amounts paid by/for borrower (line 220) | $1,041,273.62 | 602 | Less reductions in amount due seller (line 520) | |
| 303 | CASH TO BORROWER | $1,117.46 | 603 | CASH FROM SELLER | |

EXH. B3

-2-

| | L. SETTLEMENT CHARGES | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | |
|---|---|---|---|
| 00 | TOTAL SALES/BROKER'S COMMISSION based on | | |
| | Division of Commission (line 700) as follows: | | |
| 01 | | | |
| 02 | | | |
| 03 | Commission paid at Settlement | | |
| 04 | **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 01 | | $572.00 | |
| 02 | | $35.00 | |
| 03 | Appraisal Fee to Countrywide Home Loans | $390.00 | |
| 04 | Credit Report Fee to Countrywide Home Loans | $80.00 | |
| 05 | Processing Fee to Countrywide Home Loans | $26.00 | |
| 06 | Tax Service to Countrywide Home Loans | $250.00 | |
| 07 | Flood Certification to Countrywide Home Loans | $250.00 | |
| 08 | Loan Document Fee to Countrywide Home Loans | ($34,244.52) | |
| 09 | Underwriting Fee to Countrywide Home Loans | | |
| 10 | Credit From Mtg. Banker | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | $127,000.00 | |
| 16 | Additional New Loan Charges Totals (see Attached) | | |
| 17 | **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | $62.19 | |
| 01 | Interest from 7/31/2006 to 8/1/2006 @ $62.1900 | $68.00 | |
| 02 | | | |
| 03 | Hazard Insurance For EOI Direct LLC | | |
| 04 | | | |
| 05 | **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001 | | | |
| 1002 | | | |
| 1003 | | | |
| 1004 | | | |
| 1005 | | | |
| 1006 | **1100. TITLE CHARGES** | $500.00 | |
| 1101 | Settlement Charges To Trans-National Escrow Corporation | $150.00 | |
| 1102 | 2nd Deed of Trust To Trans-National Escrow Corporation | | |
| 1103 | | | |
| 1104 | | | |
| 1105 | | | |
| 1106 | | | |
| 1107 | | | |
| 1108 | Title insurance to: Ticor Title Company | $1,250.00 | |
| 1109 | First Lender's coverage to: Ticor Title Company $908,000.00 | $150.00 | |
| | Lender's coverage to: Ticor Title Company $127,000.00 | | |
| 1110 | Owner's coverage to: Ticor Title Company | | |
| 1111 | | | |
| 1112 | | $33.52 | |
| 1113 | | | |
| 1114 | Miscellaneous Title Charges (See Attached) | $145.00 | |
| | **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | |
| 1201 | Recording Fee: Deed / ; Mortgage $80 / 0 ;Release $65 /0 | | |
| 1202 | City/County tax stamps: Deed $ | | |
| 1203 | | | |
| 1204 | | | |
| 1205 | | | |
| 1206 | **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301 | County Taxes Delinquent Property Tax | $84.00 | |
| 1302 | TNE/Wire and Overnight | $150.00 | |
| 1303 | Vincent Gagliano | | |
| 1304 | | | |
| 1305 | | | |
| 1306 | | | |
| 1307 | | | |
| 1308 | | | |
| 1309 | | | |
| 1310 | | | |
| 1311 | | | |
| 1312 | | | |
| 1314 | | | |
| 1315 | | $126,951.19 | |
| 1400 | TOTAL SETTLEMENT CHARGES (enter on lines 103, Section J and 302, Section K) | | |

Rev. 7/20/95

HUD-1 Rev. 7/95

EXH. B4

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

**EXHIBIT C**
**PROOF OF FRAUDULENT BUSINESS ACT**

THIRD AMENED COMPLAINT AND DEMAND FOR JURY TRIAL (Nguyen v. Countrywide, et. al.)

-32-

DRE - Public Licensee Information

## Public License Information

Please enter the Licensee's Name (Last Name, First Name), Company Name or License Identification Number.  Name Search Help

**Licensee/Company Name:**  GALE, AARON

**Mailing Address City** *(optional)*:

OR

**License ID:**

[ Clear ]  [ Find ]

**Note:** The "Mailing Address City" may differ from the licensee's main office and/or branch office city.

**No matching public record was found for Licensee:**
**GALE, AARON**

**Home**

*EXH. C1*

# STATE OF CALIFORNIA
# DEPARTMENT OF REAL ESTATE

The license information shown below represents public information taken from the Department of Real Estate's database at the time of your inquiry. It will not reflect pending changes which are being reviewed for subsequent database updating. Also, the license information provided includes formal administrative actions that have been taken against licensees pursuant to the Business and Professions Code and/or the Administrative Procedure Act. All of the information displayed is public information. Although the business and mailing addresses of real estate licensees are included, this information is not intended for mass mailing purposes.

License information taken from records of the Department of Real Estate on 2/6/2009 12:45:26 PM

| | |
|---|---|
| **License Type:** | CORPORATION |
| **Name:** | Access Financial Network Inc |
| **Mailing Address:** | 101 MAIN ST STE 260<br>HUNTINGTON BEACH, CA 92648 |
| **License ID:** | 01299682 |
| **Expiration Date:** | 11/27/08 |
| **License Status:** | EXPIRED |
| **Corporation License Issued:** | 11/28/00 (Unofficial -- taken from secondary records) |
| **Former Name(s):** | NO FORMER NAMES |
| **Main Office:** | NO CURRENT MAIN OFFICE ADDRESS ON FILE |
| **Licensed Officer(s):** | DESIGNATED OFFICER<br>00919830 - Expiration Date: 11/27/08<br>Levin, Jon Jay<br>EXPIRED AS OF 11/28/08 |
| **DBA** | NO CURRENT DBAS |
| **Branches:** | NO CURRENT BRANCHES |
| **Comment:** | NO DISCIPLINARY ACTION |
| | NO OTHER PUBLIC COMMENTS |

>>>> Public information request complete <<<<

*EXH. C2*

**WhitePages.com - Online Directory Assistance**

# WhitePages.com™
search. find. connect.

---

**4 Results** matching "Jon Levin, Huntington (Huntington Beach), CA".

Sort by: - Select -

---

### Jon Levin

101 Main St, Ste 260
Huntington Beach, CA
92648-8153
**View phone**

Listing Details

**Job title:** President
**Company:** Access
Financial Network Group

SPONSORED LINKS
Lookup Background Info for Jon Levin.
See What Jon Levin's Home is Worth
Find School Information on Jon Levin

HOUSEVALUES.COM
See What Jon Levin's Home is Worth

---

 **Make it easy for people to contact you on WhitePages.com**    Learn more    **Add your listing**

---

### Jon Levin

21221 Spurney Ln
Huntington Beach, CA
92646-7243
*phone number unavailable*

Listing Details

**Job title:** Principal
**Company:** Jon J Levin

SPONSORED LINKS
Lookup Background Info for Jon Levin.
See What Jon Levin's Home is Worth
Find School Information on Jon Levin

HOUSEVALUES.COM
See What Jon Levin's Home is Worth

---

### Jon J Levin

20962 Sandbar, Unit 103
Huntington Beach, CA
92648-5856
*phone number unavailable*

Listing Details

**Household:** Colleen A
Levin

SPONSORED LINKS
Lookup Background Info for Jon Levin.
See What Jon Levin's Home is Worth
Find School Information on Jon Levin

HOUSEVALUES.COM
See What Jon Levin's Home is Worth

---

### John J Levin

21271 Elda Cir
Huntington Beach, CA
92648-5381
**(714) 969-9623**

Listing Details

**Household:** Colleen A
Levin, Kelly Levin

SPONSORED LINKS
Lookup Background Info for John Levin.
See What John Levin's Home is Worth
Find School Information on John Levin

HOUSEVALUES.COM
See What John Levin's Home is Worth

---

*EXH: C3*

**WhitePages.com - Online Directory Assistance**

<u>View More Profiles for Jon Levin</u>

| Name | Location | Email | Profile |
|---|---|---|---|
| JON LEVIN | Pacoima, CA | Available | View Profile |
| JON LEVIN | Richmond, CA | Available | View Profile |
| JON LEVIN | Huntington Beach, CA | Available | View Profile |
| JON LEVIN | Thousand Oaks, CA | Available | View Profile |

See all profiles for Jon Levin
Sponsored by Reunion.com

Copyright © 1996-2009 Whitepages.com. All rights reserved.
Privacy Policy, Legal Notice and Terms under which this service is provided to y

Microsoft MapPoint Terms of Use and Privacy Statement.

*EXH.C4*

id=7206142182197529348&city=...  2/6/2009

WhitePages.com - Online Directory Assistance



## Listing Detail

**Jon Levin**
101 Main St, Ste 260
Huntington Beach, CA 92648



*EXH. C5*

# Doing business in other states

From time to time the Mortgage Loan Activities Unit receives a call from a broker who wants to solicit and negotiate loans in other states. While California is a "licensing state" not all other states have similar laws. Anyone who wishes to do business in another state will need to contact the licensing officials in that state to determine what, if any, license is required. Even if no license is required in another state, California Business and Professions Code Section 10130 does require that any person who engages in the business, acts in the capacity of, advertises or assumes to act as a real estate broker or salesperson *within this state* must hold a California real estate license. That includes conducting mortgage loan activities in other states from *within* California unless otherwise exempted from the licensing requirement pursuant to Business and Professions Code Section 10133.1(a) – for example, a CFL or RML licensee, a bank, savings institution, or credit union, etc.

The Web site of the Association of Real Estate License Law Officials (ARELLO) lists the names, addresses and telephone numbers for each member real estate licensing agency in North America and is a good resource for anyone interested in doing business in other states. The Web site address is *www.arello.org*; choose CONSUMER, then REGULATORY AGENCIES. ✍



The eLicensing online system available at *www.dre.ca.gov* offers expedited processing of the following services any time of the day or week:

- Broker and salesperson license renewals
- Duplicate license requests (broker, salesperson, officer and branch office)
- Salesperson requests to change employing broker
- Broker certification of salesperson employment
- Licensee mailing address changes
- Broker main office address changes
- Electronic Real Estate Bulletin
- Examination services: *reschedule exam date; apply to re-take exam; change exam mailing address; view exam records; check scheduled exam date; time and location; view exam results; request duplicate schedule notices and result notices; see if original license has been issued.*

You must have an existing examination record or license on file with the DRE to use eLicensing. To use eLicensing for the first time, you need to register at *www.dre.ca.gov* to create a user name and password.

# Broker Options for Real Estate Activities

Licensed real estate brokers can conduct licensed activities for more than one entity, as defined in Section 10131 of the Business and Professions Code: "A real estate broker...does or negotiates to do one or more of the following acts for another or others." In short, a broker may operate under his individual broker license and/or as the designated officer for one or more licensed real estate corporations.

A broker also has the option of working for another broker or licensed corporation by entering into a Broker-Salesman Agreement pursuant to Commissioner's Regulation 2726 as a broker-associate. When this option is exercised, it is important that the broker-associate report additional addresses to the DRE. For instance, if the broker-associate will be conducting licensed activities at the address of the employing broker,

> A broker may operate under his broker license and/or as the designated officer for other Real Estate Corporations.

then the broker associate must add this additional address to his or her license as a "branch" address if it is different from the main office address. This is done using the form RE 203, Branch Office Application. If some of the activities will be conducted at the broker-associate's business address, then the *employing* broker must apply for a branch office license to add the broker-associate's address. See Business and Professions Code Section 10163 for branch offices. There is no requirement for the employing broker to take possession of the broker-associate's license certificate as he or she would for a salesperson licensee.

The Branch Office Application, RE 203, can be printed from our Web site at *www.dre.ca.gov* under Forms (Licensing). ✍

EXH. C6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

# EXHIBIT D
## THE ADJUSTABLE RATE RIDER

23
24
25
26
27
28

THIRD AMENED COMPLAINT AND DEMAND FOR JURY TRIAL (Nguyen v. Countrywide, et. al.)

-33-

# ADJUSTABLE RATE RIDER
### (PayOption MTA Twelve Month Average Index - Payment Caps)

| 40973-ML | 00014124516307006 |
|----------|---------------------|
| [Escrow/Closing #] | [Doc ID #] |

THIS ADJUSTABLE RATE RIDER is made this TWENTY-FOURTH day of JULY, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and located at:

21359 ESTEPA CIRCLE
Huntington Beach, CA 92648-5399
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

• **PayOption MTA ARM Rider**
**1E310-XX (09/05)(d)**

Page 1 of 6





EXH. P1

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of the Note, I will pay interest at a yearly rate of 2.500 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of 2.500 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of the Note is the rate I will pay both before and after any default described in Section 7(B) of the Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of NOVEMBER, 2006 , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE & 425/1000 percentage point(s) ( 3.425 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than 9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

EXH. D2

I will make my monthly payments on the FIRST day of each month beginning on September, 2006 . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on AUGUST 01, 2036 , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 3,587.70 , unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first day of SEPTEMBER, 2007 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.500% of my prior monthly payment. This 7.500% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075 . The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

EXH.D3

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the tenth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

• **PayOption MTA ARM Rider**
**1E310-XX (09/05)**          Page 4 of 6          ExH. D4

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

*EXH. D5*

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____

DAVIS T. NGUYEN                                              -Borrower

_____

                                                            -Borrower

_____

                                                            -Borrower

_____

                                                            -Borrower

• **PayOption MTA ARM Rider**
**1E310-XX (09/05)**                  Page 6 of 6

EXH . D6

David Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT E**
**THE NEW LOAN PAYMENT FORM**

Prepared by: JESUS CALDERON

# NEW LOAN PAYMENT FORM

**Loan Number**
141245163

**Lender:**
COUNTRYWIDE HOME LOANS, INC.

**Payment Address:**
P.O. Box 10219, Van Nuys, CA 91410-0219

**Name of Mortgagor**
DAVIS T. NGUYEN

**Property Address**
21359 ESTEPA CIRCLE, Huntington Beach, CA 92648-5399

**Mailing Address**
21359 ESTEPA CIR, HUNTINGTON BEACH, CA 92648-5399

| Date of Loan 07/24/2006 | Next Pymt. No. | Late Charge Rate Code | Principal Balance 908,000.00 |
|---|---|---|---|
| Maturity Date 08/01/2036 | Acquisition Type | First Dist. Type | Loan Amount 908,000.00 |
| Term 360mo | Loan Type CONV | Region Number | Interest Rate 2.500% |

Your first monthly payment will be due on     SEPTEMBER 01, 2006 . All payments are due on or before the 1st     day of each month.

**Estimated Monthly Payment:**

| | | |
|---|---|---|
| Principal and Interest | $ | 3,587.70 |
| 1/12 Annual Taxes - City/County | $ | N/A |
| City | $ | N/A |
| County | $ | 0.00 |
| 1/12 Annual Assessments | $ | N/A |
| 1/12 Hazard Insurance | $ | N/A |
| 1/12 Annual PMI/MIP Premium | $ | N/A |
| 1/12 Flood Insurance | $ | N/A |
| | $ | N/A |
| | $ | N/A |
| | $ | N/A |
| Total Payment | $ | 3,587.70 |
| Interest Credit | $ | N/A |
| Total Amount of First Payment Only | $ | 3,587.70 |

All Payments thereafter     N/A

(Add back interest credit)

## NOTICE TO BORROWER

In the event you do not recei   our payment coupon booklet prior to your first payment due date, please remit your payment with this r   loan payment form to:

P.O. Box 10219, Van Nuys, CA 91410-0219

| Borrower   DAVIS T. NGUYEN | Date |
|---|---|
| Borrower | Date |
| Borrower | Date |
| Borrower | Date |

324 (0306)     CHL (10/05)(d)          VMP Mortgage Solutions, Inc. (800)521-7291          6/03





EXH. E

Davis Nguyen
21359 Estepa Cir
Huntington Beach, CA 92648
714-849-9463

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT F**
**NOTICE OF RIGHT TO CANCEL**

**NOTICE OF RIGHT TO CANCEL**

Prepared by: JESUS CALDERON

DATE:     07/24/2006
BORROWER: DAVIS T. NGUYEN
CASE #:
LOAN #:   141245163
PROPERTY ADDRESS: 21359 ESTEPA CIRCLE
                   Huntington Beach, CA 92648-5399

Branch #: 0000742
101 MAIN STREET
HUNTINGTON BEACH, CA 92648
Phone: (714) 969-3600
Br Fax No.: (714) 960-6172

## YOUR RIGHT TO CANCEL

You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

   (1)   The date of this new transaction, which is _____ ; or
   (2)   The date you received your new Truth In Lending disclosures; or
   (3)   The date you received this notice of your right to cancel.

If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit. We must also return any money you have given to us or anyone else in connection with this new transaction.

You may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the money at the address below.

If we do not take possession of the money within TWENTY CALENDAR DAYS of your offer, you may keep it without further obligation.

---

### HOW TO CANCEL

If you decide to cancel this new transaction, you may do so by notifying us in writing, at:

COUNTRYWIDE HOME LOANS, INC.
101 MAIN STREET
HUNTINGTON BEACH, CA 92648

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of _____ (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above).

If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

### I WISH TO CANCEL

_____      _____
CONSUMER'S SIGNATURE                       DATE

---

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective as to all borrowers/owners.

The undersigned each acknowledge receipt of two copies of <u>NOTICE of RIGHT TO CANCEL</u> and one copy of the Federal Truth in Lending Disclosure Statement.

_____     _____
BORROWER/OWNER                 DATE     BORROWER/OWNER           DATE
DAVIS T. NGUYEN

_____     _____
BORROWER/OWNER                 DATE     BORROWER/OWNER           DATE



*EXH. F*

